UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
SHAWN ACK, MAYNOR HODGSON, JORGE :
PERALTA, and VIRGILIO REYNA, individually and on :
behalf of all other similarly situated employees, :
: ORDER
Plaintiffs, : 11-CV-5582 (CBA)
:
-against- :
:
:
MANHATTAN BEER DISTRIBUTORS, INC., :
MANHATTAN BEER DISTRIBUTORS, LLC, and :
SIMON BERGSON, :
:
Defendants. :
------------------------------------------------------------------- x
GOLD, STEVEN M., U.S.M.J.:

    Plaintiffs bring this action on behalf of themselves and all similarly situated Sales Associates of defendants, seeking unpaid wages allegedly owed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York State Labor Law.  With respect to their FLSA claim, plaintiffs allege that defendants regularly failed to pay plaintiffs overtime wages.[1]  Compl. ¶¶ 59-60.  More specifically, plaintiffs contend that they were paid a weekly salary based upon a forty-hour week, regardless of the number of hours they actually worked.

    Plaintiffs move for an order (1) conditionally certifying this action as a collective action on behalf of all current and former "Sales Associates" employed by defendants since November 15, 2008, (2) authorizing an "opt-in" notice of this action to all employees within the class, and approval of a proposed notice, and (3) compelling production by the defendants of relevant

---

[1] The complaint alleges that defendants also failed to pay minimum wages, but the factual assertions in plaintiffs' declarations do not support a claim for failure to pay minimum wages.  *See*, *e.g.*, Ack Decl. ¶¶ 12, 13, Docket Entry 19-3.  Moreover, the proposed 216(b) notice to be distributed to Sales Associates states that plaintiffs are seeking overtime wages only.  Docket Entry 19-8.

information identifying individuals within the proposed class.[2] Docket Entries 18-20. Defendants oppose certification, arguing that plaintiffs have failed to establish that the members of the proposed collective action are similarly situated or that defendants have an unlawful policy. Docket Entry 26. In the alternative, if the court certifies a collective action, defendants contend that the class and the proposed notice should be modified. *Id.*

A.  216(b) Certification

Section 216(b) of FLSA provides that "one or more employees" may move to have their case certified as a collective action "for and in behalf of . . . themselves and other employees similarly situated." *See also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). Upon granting conditional certification, the court may authorize a FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action. *Id.* at 104. After receiving the written notice, employees who seek to join the collective action "must 'opt in' and consent in writing." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006). *See also* 29 U.S.C. § 216(b). "[O]nly potential plaintiffs who 'opt-in' can be 'bound by the judgment' or 'benefit from it.'" *Gjurovich*, 282 F. Supp. 2d at 104.

Courts have broad discretion over whether to grant certification, what discovery to allow, and what form of notice to provide.[3] *Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008). Certification of a collective action "is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated," and "merely provides an opportunity for potential plaintiffs to join." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 81-82 (E.D.N.Y. 2008); *Gjurovich,* 282 F. Supp. 2d at 104). "After discovery, . . .

---

[2] During oral argument on the motion held on April 17, 2012, the parties agreed that the term "Sales Associate" includes any "Momentum Sales Associate."
[3] It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action. *See*, *e.g.*, *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010); *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *8 (E.D.N.Y. Apr. 9, 2010).

2

the court examines with a greater degree of scrutiny whether the members of the plaintiff class – including those who have opted in – are similarly situated." *Laroque v. Domino's Pizza, LLC*, 2008 WL 2303493, at *4 (E.D.N.Y. May 30, 2008) (*citing Jacobs v. New York Foundling Hospital*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007)).

To proceed with a collective action, "[t]he named plaintiff must . . . show that he is similarly situated to the prospective plaintiffs who would benefit from notice of the right to join." *Bowens*, 546 F. Supp. 2d at 81. Although neither FLSA nor its implementing regulations define the term "similarly situated," courts in this Circuit "have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Morales*, 2006 WL 278154, at *2; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001) ("Generally, at the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."). To determine whether this minimal burden has been met, courts consider the "'(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class.'" *Laroque*, 2008 WL 2303493, at *5 (*quoting Guzman v. VLM, Inc.*, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007)). "Courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (internal quotation marks omitted).

In support of their certification motion, the five named plaintiffs have submitted declarations stating that each was employed by defendants as a Sales Associate and was not compensated for overtime hours worked.[4] Ack Decl. ¶¶ 1, 11, 12; Hodgson Decl. ¶¶ 1, 11; Peralta Decl. ¶¶ 1, 14; Birch Decl. ¶¶ 1, 12; Reyna Decl. ¶¶ 1, 12.[5] Moreover, each plaintiff describes a similar practice, pursuant to which he was told he would be working a forty-hour week and paid accordingly but was in fact required to work a substantial number of overtime hours. Ack Decl. ¶¶ 8, 11; Hodgson Decl. ¶¶ 7, 10; Peralta Decl. ¶¶ 8, 13; Birch Decl. ¶¶ 8, 11; Reyna Decl. ¶¶ 8, 11. All, with one exception, further state that they are aware and have personal knowledge that "other Sales Associates regularly worked hours beyond forty (40) per week and received paychecks showing only forty (40) hours of work per week." Ack Decl. ¶ 21; Hodgson Decl. ¶ 21; Birch Decl. ¶ 20; Reyna Decl. ¶ 20.

Plaintiffs have thus presented evidence indicating that they and other Sales Associates did not receive the wages to which they were entitled by law.[6] As stated above, plaintiffs' burden at this stage is minimal, and courts have authorized collective actions under circumstances comparable to those presented here. *Compare Bowens*, 546 F. Supp. 2d at 82 (certifying a collective action where plaintiff submitted a declaration confirming that other workers were not paid) *and Sobczak*, 540 F. Supp. 2d at 362-63, *with Morales*, 2006 WL 278154, at *3 (denying

---

[4] Plaintiff Dwayne Birch joined the lawsuit approximately one month after the complaint was filed. Docket Entry 11. I view plaintiff Virgilio Reyna's declaration as support in a historical context of defendants' practices because Reyna's employment period as a Sales Associate falls outside the class definition and is time-barred. Reyna was a Sales Associate from May to September of 2007. Reyna Decl. ¶ 1. Plaintiffs define the class as those who were Sales Associates on or after November of 2008, or three years prior to the filing of the complaint. Docket Entry 19-8.
[5] The plaintiffs' declarations are attached as exhibits to Docket Entry 19.
[6] In their complaint and proposed notice, plaintiffs seek to certify a class of all Sales Associates "and other persons in similar positions." Docket Entry 19-8 at 2; *see also* Compl. ¶ 13. Plaintiffs, however, have not identified what other job category or individuals would be in similar positions. Accordingly, as stated on the record at the oral argument held on April 17, 2012, the notice should strike any reference to other persons in similar positions and the notice should be sent only to current and former Sales Associates.

certification because "plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value").

Defendants oppose certification of any collective action, arguing that 1) plaintiffs failed to establish that other similarly situated employees exist, 2) plaintiffs failed to establish an unlawful common policy, and 3) individualized inquiries of whether plaintiffs or any opt-in plaintiffs are exempt under the FLSA outside sales exemption predominate. As part of their opposition, defendants submitted three declarations: one from William DeLuca, the Senior Vice-President of Sales and Marketing, and one each from two Brooklyn supervisors who supervised some of the named plaintiffs.[7]

### 1. *Whether Other Similarly Situated Employees Exist*

Defendants contend that plaintiffs' employment experiences are limited not only to its Brooklyn Sales Division, but to working only on chain store accounts and under two particular supervisors. Defendants argue that plaintiffs cannot establish that Sales Associates with a different supervisor, or those who work in any of defendants' other four facilities, or on other types of accounts, are similarly situated. Def. Opp. 7-11, Docket Entry 26.

One prong of defendants' argument appears to be that the *duties* of Sales Associates in other locations and under different supervisors precludes a finding that other Sales Associates are similarly situated to plaintiffs. DeLuca Decl. ¶ 4, Docket Entry 24 (stating that "the duties and work experiences of Sales Associates . . . in Brooklyn are distinctly different than other Sales Associates in the Company"). Defendants' argument that each Sales Associate's duties vary depending on the supervisor, location, and type of account, however, misses the mark. Any question concerning the responsibilities of Sales Associates, and how the duties may differ

---

[7] One of the plaintiffs states that Richard Kleberg is the Director of Human Resources for defendants. Hodgson Decl. ¶ 26. Defendants did not provide an affidavit or declaration from Kleberg concerning the company's overtime policies and pay practices for Sales Associates.

amongst the various locations and under particular supervisors, may be relevant to whether a particular Sales Associate is exempt under FLSA. Potential exemptions, however, as discussed below, are not properly considered at the conditional certification stage. *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706534, at *6 n.4 (E.D.N.Y. Aug. 14, 2008). *See also Raimundi v. Astellas U.S. LLC*, 2011 WL 5117030, at *1 (S.D.N.Y. Oct. 27, 2011) (stating that "[v]ariations in sales representatives' workdays and expertise does not establish as a matter of law that they are not similarly situated" and certifying a nationwide collective action of defendants' sales representatives).

Defendants also contend that plaintiffs' experiences were limited to the "unique practices of [two Brooklyn supervisors] Gadson and Diaz," and do not reflect the typical experience of Sales Associates.[8] Def. Opp. 10. For the reasons discussed below, and in light of plaintiffs' minimal burden at this stage of the litigation, I conclude that defendants have failed to rebut plaintiffs' demonstration of a company-wide policy. At least two plaintiffs spoke with Gadson about overtime compensation and, according to their declarations, Gadson told each of them that "*the company* d[oes] not pay overtime." Ack Decl. ¶ 24 (emphasis added); *see also* Birch Decl. ¶ 23. In his declaration, Gadson does not refute these statements or deny that he made them. Gadson Decl., Docket Entry 23. He simply states:

> I assigned the work of the Sales Associates I supervised to be finished within 40 weekly hours. I often told my Sales Associates 'If you are running late[,] give me a call or send me an email or text and I'll send you some help. . . . Specifically, I tell all Sales Associates that if by 3:00 pm they are running behind plan for any reason, they should immediately contact me. I'll reassign employees to certain accounts, re-schedule certain accounts or go to our customers' location myself to get the job done.

---

[8] Plaintiff Reyna indicates that his supervisor was Frank Valdez, and that his supervisor was also aware that plaintiff was working more than forty hours per week without being paid overtime. Reyna Decl. ¶ 9.

Gadson Decl. ¶¶ 11, 12. *See also* Diaz Decl. ¶ 5, Docket Entry 25 ("The assignments I gave Mr. Peralta were designed to be accomplished in a 40 hour work week."). These statements by defendants' supervisors do not refute plaintiffs' assertions that plaintiffs were frequently required to work more than forty hours to complete their assignments and that defendants' general policy was not to pay any overtime. Gadson's declaration is silent as to whether his supervisees actually worked more than forty hours, even when they contacted him to say they were running behind schedule. Defendants have not submitted any evidence that any Sales Associate, and in particular any named plaintiff who states that he is owed overtime, was actually paid any overtime for work over forty hours. In any event, the merits of an FLSA claim are not properly considered when deciding a motion for conditional certification. *Raimundi*, 2011 WL 5117030, at *1; *Ravenell v. Avis Budge Car Rental, LLC*, 2010 WL 2921508, at *2 (E.D.N.Y. July 19, 2010).

Moreover, at the oral argument, I granted plaintiffs the opportunity to submit any additional evidence in support of their assertion that Sales Associates in other locations suffered from the same allegedly unlawful policy described by the named plaintiffs. Plaintiffs have now submitted declarations of two Sales Associates who worked for defendants in Queens and under different supervisors. Docket Entries 34, 40. The two Queens Sales Associates confirm plaintiffs' assertion that Sales Associates generally worked more than forty hours per week without overtime compensation.[9] Tejeda Decl. ¶¶ 7-11; Urena Decl. ¶¶ 8-11. Defendants' arguments suggesting that the declarations of these new individuals fail to support plaintiffs' claims of a company-wide policy are unpersuasive. Docket Entry 42.

---

[9] Based on a three-year statute of limitations, plaintiff Yansi Urena's damages will be limited to those incurred from April 26, 2009, three years from the filing of his consent, to May, 2009, when he left defendants' employ. Jeffrey Urena filed a consent to join the lawsuit, Docket Entry 41, but plaintiffs have not provided any information as to his work location or an affidavit from him concerning defendants' overtime policy.

Accordingly, I find that plaintiffs have met their minimal burden and made the requisite modest showing that other Sales Associates are similarly situated for purposes of a collective action.  *See*, *e.g.*, *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *5 (E.D.N.Y. June 16, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368-69 (S.D.N.Y. 2007) (finding that plaintiffs, who had "unique" jobs at one of defendants' locations, were nonetheless similarly situated to defendants' other employees).

    2.   *Whether Defendants Have an Unlawful Common Policy*

Defendants further contend that plaintiffs failed to establish that defendants employ a common policy that denies all Sales Associates overtime wages.  Def. Opp. 11- 15.  Defendants essentially repeat their argument that plaintiffs' experiences and knowledge is limited to the Brooklyn facility.  For the reasons stated above, this argument is rejected.  Plaintiffs have sufficiently established that a single entity, Manhattan Beer, has a common policy governing its pay practices with respect to Sales Associates, even though it operates multiple locations.  *Compare Karic v. Major Auto. Cos.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (finding common ownership of defendant entities and allegations that all were operated by the same individuals and pursuant to the same policies was sufficient to certify collective action for all similarly situated employees of defendants, even though no named plaintiff had yet appeared with respect to three locations); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 678 F. Supp. 2d 89, 93 (E.D.N.Y. 2010) (certifying a collective action of defendants' three restaurants even though plaintiffs worked at a single location), *with Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (denying certification of a class that included employees at locations other than plaintiffs' location based on a lack of evidence that any unlawful policy extended beyond the store where plaintiffs worked).

8

Plaintiffs contend that defendants' pay policy and practice with respect to Sales Associates is that Sales Associates are required to work as many hours as needed to complete their work assignments but are paid for only forty hours of work. As noted above, plaintiffs contend that the defendants' general policy is not to pay any overtime. *See* Ack Decl. ¶ 24; Birch Decl. ¶ 23.

Defendants respond that the plaintiffs' experiences are unique and not typical of defendants' policy.[10] Def. Opp. 14-15. Defendants, however, do not refute plaintiffs' assertions that all Sales Associates were paid based on a forty-hour work week, even though they were often required to work more than forty hours per week. Indeed, defendants offer no evidence of what the company pay policies and practices for Sales Associates are. For example, there is no affidavit from defendants' human resources manager stating the payment policies and practices of Manhattan Beer with respect to its Sales Associates, and whether all are classified as exempt under the FLSA, or whether there is a mechanism for calculating overtime and paying overtime wages. In the declaration of William DeLuca, Senior Vice-President of Sales and Marketing, he makes no mention of the pay policies or practices generally applicable to Sales Associates. *Cf. McGlone v. Contract Callers, Inc.*, 2012 WL 1174722, at *1 (Apr. 9, 2012) (noting that an "Employee Manual . . . states, '[defendant] will pay overtime consistent with applicable federal and state law and regulations'"). There is simply no evidence to support defendants' suggestion that the supervisors were responsible for overtime determinations and that Brooklyn and Queens supervisors in particular acted aberrantly in permitting Sales Associates to work more than forty hours without overtime pay. Based on the evidence presented, or more precisely the lack of any statement to the contrary, it is reasonable to infer that all Sales Associates were paid out of

---

[10] Defendants do not appear to dispute for purposes of the pending motion that the named plaintiffs worked more than forty hours per week and were not compensated for any overtime.

9

defendants' "home office" and thus all Sales Associates regardless of their location were paid in the same manner – a weekly rate based on forty hours, even if a Sales Associate worked additional hours. *Cf. Siewmungal v. Nelson Mgmt. Group Ltd.*, 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012). Thus, plaintiffs have sufficiently alleged for certification purposes that defendants had an unlawful policy of not paying their Sales Associates overtime.

    *3. FLSA Outside Sales Exemption*

Finally, defendants contend that plaintiffs' claims involve individualized determinations of whether a particular Sales Associate falls under the outside sales exemption of FLSA. Def. Opp. 15-17 (citing *Guillen v. Marshalls of MA Inc.*, 2012 WL 117980, at *5 (S.D.N.Y. Jan. 13, 2012). According to the Senior Vice-President of Sales and Marketing, "the method of operation of one Division's sales teams is not representative of another Division's method of operation." DeLuca Decl. ¶ 4; *see also id.* ¶ 9. Moreover, "within each Sales Division, the spectrum of sales and merchandizing performed by Sales Associates varies substantially." *Id.* ¶ 10.

Defendants' arguments and citation to *Guillen* are misplaced. Plaintiffs seek to establish that all Sales Associates were misclassified as exempt, which does not require an individualized analysis. Despite defendants' argument to the contrary, courts have found that a collective action may be certified where an employer misclassified as exempt all individuals in a particular position. *See*, *e.g.*, *Ravenell*, 2010 WL 2921508, at *4-6. Moreover, "whether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court [at the collective action certification stage]. Such factual determinations [should] be addressed at the second stage of the certification process after the completion of discovery." *Summa v. Hofstra Univ.*, 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008).

*Conclusion*

Plaintiffs have made a "modest" factual showing that all Sales Associates at all facilities were subject to an unlawful policy of not being paid overtime. Accordingly, plaintiffs' motion to certify a collective action is granted.

B.   *Notice*

Plaintiffs have submitted a proposed notice for approval by the court, to be posted at defendants' business locations and to be mailed to current and former employees. Docket Entry 19-8. Defendants have submitted their own proposed notice. Docket Entry 22-1. In their reply, plaintiffs do not object to the language in defendants' proposal. As indicated on the record at the oral argument held on April 17, 2012, the following modifications should be made to the notice: 1) the phrase "and other persons in similar positions" shall be stricken; 2) the applicable limitations period for purposes of the notice is three years from the date the notice will be distributed; 3) the notice shall be posted at defendants' various locations; and 4) the opt-in period shall be sixty days. In addition, the notice should include contact information for defendants' counsel and the defendants' proposed language concerning the effect of joining the lawsuit.

C.   *Discovery*

Finally, plaintiff seeks an order compelling discovery of "names, addresses, phone numbers, and personal email addresses" of individuals within the collective action definition. Pl. Mem. 12. Defendants object to producing telephone numbers and email addresses, citing privacy concerns and New York Labor Law § 203-d. Def. Opp. 24-25. At the oral argument, the parties agreed to enter into a protective order, but, as of today's date, no such order has been filed with the court.

Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions.  *See*, *e.g.*, *Guan Ming Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 178-79 (S.D.N.Y. 2011); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009).  More recently, courts have also been receptive to demands for discovery of email addresses.  *See*, *e.g.*, *Jacob v. Duane Reade, Inc.*, 2012 WL 260230, at *9-10 (S.D.N.Y. Jan. 27, 2012); *Pippins v. KPMG LLP*, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) (recognizing the need for discovery of email addresses, "given the reality of communications today"); *Raniere v. Citigroup Inc.*, _ F. Supp. 2d _, _, 2011 WL 5881926, at *29 (S.D.N.Y. Nov. 22, 2011).  Accordingly, the defendants are hereby directed to produce all available contact information, including telephone numbers and email addresses, for individuals within the definition of the FLSA collective action.

Defendants' shall produce contact information, if not already produced, no later than May 23, 2012.  Plaintiffs shall complete mailing and posting of the notice no later than June 1, 2012, with an opt-in deadline of August 1, 2012.  As stated at the oral argument, the parties shall submit a case management schedule no later than May 18, 2012.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
May 15, 2012

*U:\eoc 2012\ack 216b final.docx*